UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS R. HOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO. 12-10063-JGD |
| | ) | |
| TOWN OF SANDWICH | ) | |
| and DENNIS BYRNE, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OF DECISION AND ORDER ON MOTION OF TOWN OF SANDWICH FOR SUMMARY JUDGMENT

June 30, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

The Plaintiff, Thomas R. Hogan, ("Hogan"), resides in the Town of Sandwich. He has brought suit against the Town under the Massachusetts Torts Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, alleging that the Town is liable for injuries he sustained in an altercation with an off-duty police officer, the defendant Dennis Byrne ("Byrne"). For the reasons detailed herein, I find that the Town is immune from this claim.

The undisputed facts establish that Hogan had been having a lengthy on-again, off-again, intimate relationship with Byrne's wife, as a result of which there was much animosity between the two men. On the evening of June 17, 2009, Mrs. Byrne was at Hogan's house, when her husband came to talk to her. After turning Byrne away from

the door several times, Hogan eventually let Byrne in, without notifying any Town personnel. Byrne, who had completed work for the day and was not in uniform, had a heated verbal altercation with his wife. When he was leaving, he allegedly assaulted Hogan. Hogan contends that the Town is liable to him for the injuries he sustained, and that the Town failed to fulfill specific assurances it had made to keep Byrne away from Hogan.

The matter is presently before the court on "Defendant Town of Sandwich's Motion for Summary Judgment." (Docket No. 32). Therein, the Town contends that the claim against it should be dismissed because Hogan's presentment letter failed to adequately advise the Town of his claims, as required by Mass. Gen. Laws ch. 258, § 4, and because the Town is entitled to immunity pursuant to Mass. Gen. Laws ch. 258, § 10.

This court will assume, *arguendo*, that the presentment letter was sufficient. Nevertheless, the motion for summary judgment will be allowed. First, the statements attributed by Hogan to Town officials promising to keep Byrne away from Hogan are not sufficiently specific to constitute enforceable assurances under the MTCA. Second, even if they were, in light of Hogan's decision to allow Byrne into his home, without notifying any Town personnel, no jury could reasonably conclude that Hogan's injuries "resulted in part from reliance upon those assurances" as required by Mass. Gen. Laws ch. 258,

§ 10(j)(1). Therefore, the Town is immune from suit under the MTCA. The motion for summary judgment (Docket No. 32) is ALLOWED.[1]

## II. STATEMENT OF FACTS[2]

Hogan is a resident of the Town of Sandwich. (DF ¶ 1). Byrne is also a Sandwich resident, and at the relevant time was a police officer in the Town. (DF ¶ 2). From 2000 to 2009, Hogan had an on and off intimate relationship with Byrne's wife, Dana Byrne ("Dana"). (DF ¶ 3). As a result, there were a number of disputes between the two men, including instances where Byrne left threatening phone messages for Hogan and confronted Hogan in a threatening manner. (See, e.g., DF ¶¶ 23, 32, 35, 43). It is not necessary to go into details of all of their interactions. Suffice it to say Byrne objected to the relationship between Hogan and his wife. Nevertheless, the relationship, and the marriage, continued, and the tension this caused carried over into Byrne's performance of his job. (E.g. DF ¶ 55). While neither Hogan nor Dana ever pressed charges against Byrne, or sought to obtain any restraining orders, Hogan and Dana did complain to Byrne's superiors about him. (E.g., DF ¶¶ 37, 44, 48, 50-52).

---

[1] In light of this conclusion, this court will not address the alternative grounds raised by the Town.

[2] Unless otherwise indicated the facts are derived from "Defendant's, Town of Sandwich, Concise Statement of Undisputed Material Facts in Support of Summary Judgment" ("DF") (Docket No. 34) and exhibits thereto ("Def. Ex."); "Plaintiff's Response to Defendant Town of Sandwich's Concise Statement of Facts" ("PR") and "Statement of Additional Material Facts Pursuant to Local Rule 56.1" ("PF") (Docket No. 40) and exhibits thereto ("Pl. Ex."); and "Defendant's, Town of Sandwich, Reply in Support of Their Motion for Summary Judgment" ("DR") (Docket No. 41).

Sandwich Police Chief Miller first heard about the issues between Hogan, Byrne and Dana in or about 2002. (DF ¶ 22; PR ¶ 22). At various times thereafter Byrne was advised by Chief Miller and others to, among other things, get counseling, get a divorce, and stay away from Hogan. (E.g., DF ¶¶ 26, 31, 34). In addition, police personnel had various conversations with Hogan. The precise words used, context of the communications and meaning of the statements made are in dispute. (See, e.g., PF ¶¶ 65, 66; DR ¶¶ 65, 66).[3] Hogan describes the evidence as follows:

> In the present case, the evidence establishes that the Plaintiff met with Chief Michael Miller on at least two occasions, and spoke to him on the telephone several times, about incidents involving Dennis Byrne. During these conversations, Chief Miller specifically stated to the Plaintiff that he would (1) order Byrne to leave his gun at the station when he was not on duty; (2) assign Byrne to a sector of town away from the Plaintiff's residence and business; (3) order Byrne not to respond to any calls involving the Plaintiff; and (4) ensure that Byrne stays away from and has no contact with the Plaintiff.* These were "standing orders" which remained in effect between 2003 and the assault in 2009. In fact, the no contact order was reiterated, in writing, as late as February 5, 2009, just four months before the assault.
>
> *[fn 3] Chief Miller also told the Plaintiff at one point that he would take Byrne off the street, assign him to desk duty, and order him to undergo a psychological evaluation, but there is no dispute that these orders were no longer in effect at the time of the assault.

(Pl. Mem. (Docket No. 38) at 13). These are the "assurances" on which Hogan relies in this litigation. (Id.).

---

[3] In ruling on the motion for summary judgment, this court will accept plaintiff's characterizations.

According to the plaintiff, on June 17, 2009, Dana arrived at Hogan's house at approximately 8:00 p.m. to have drinks. (DF ¶ 4). Byrne arrived at approximately 9:00 p.m. in his cruiser. (DF ¶ 7). Speaking through the screen door, Byrne told Hogan he wanted to speak with Dana. (Id.). When she wouldn't speak with him, Byrne left. (Id.). Hogan did not notify Chief Miller or anyone else about this visit, despite having been previously told by Chief Miller to do so in the event he saw Byrne. (DF ¶ 41).

Byrne returned in his cruiser about an hour later, and again asked, through the screen door, to speak to Dana. (DF ¶ 8). Hogan told Byrne to leave, and Byrne left. (DF ¶ 9). Again, Hogan did not notify Chief Miller or anyone from the Town about this visit. According to Hogan, he told Dana to leave but she refused. (DF ¶ 10).

According to the plaintiff, Byrne returned to Hogan's house at approximately 11:30 p.m. (DF ¶ 11). By this time, Byrne was off-duty, had changed into street clothes, and was in his own car. (Id.). Byrne again asked to speak to Dana, and this time Hogan let him into the house. (DF ¶ 12). Hogan did not notify Chief Miller or anyone else that Byrne had returned or that he had let Byrne into his house.

According to the plaintiff, Byrne and Dana engaged in a heated conversation, which included loud cursing. (DF ¶ 13). Hogan went out onto his back deck to give them privacy, but came back inside occasionally to tell them to lower their voices. (Id.). After about 45 minutes, Hogan told Byrne to leave. (DF ¶ 15). At this point Byrne starting yelling at Hogan, and the two men swore at each other. (Id.). According to the plaintiff, when he turned away from Byrne, Byrne punched and beat him. (DF ¶ 16).

5

The parties disagree as to whether Hogan threw the first punch. They also disagree as to whether Hogan simply grabbed Byrne to stop him from hitting him, or actually hit Byrne. (See DF ¶¶ 16-18). These differences are not material to the issues before the court.

According to Hogan, he did not consider calling the police at any time because he did not want to jeopardize Byrne's livelihood. (DF ¶ 14). In fact, in connection with each incident prior to June 17, 2009, Hogan had indicated that he did not want to press charges against Byrne and he did not want to cost Byrne his job. (DF ¶ 48). However, while the two men were fighting on the night of June 17th, Dana called 911 and the fighting stopped. (DF ¶ 18). Hogan initially told the responding police officer that he did not want to press charges, but eventually he decided to pursue the matter. (DF ¶ 19). The next day Byrne was placed on administrative leave. (DF ¶ 20). He never returned to work as a police officer. (Id.).

Hogan explains his actions in allowing Byrne into his house as follows:

> ... it can be reasonably inferred that the Plaintiff permitted Dennis Byrne to enter his house, and did not call the police, only because the specific actions taken by Chief Miller had, at least until that point, successfully prevented an incident of violence over a period of several years. The Plaintiff and Dennis Byrne both knew that Chief Miller and other supervisory officers were paying close attention to the ongoing problems, and that any substantial violation could result in disciplinary action.

(Pl. Mem. at 14). Thus, in allowing Byrne into his home, Hogan argues that he "reasonably relied upon the deterrent effect of the standing orders." (Id.).

Additional facts relevant to this court's analysis will be described below.

6

## III. ANALYSIS

### A. Summary Judgement Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. Applying these principles to the instant case compels the conclusion that the Town's motion for summary judgment should be allowed.

**B.     Sovereign Immunity**

The MTCA "allows those with valid claims in tort to recover against governmental entities." Lawrence v. City of Cambridge, 422 Mass. 406, 408, 664 N.E.2d 1, 2 (1996). Thus, public employers may be liable for injuries caused by the negligence of a public employee while such employee is acting within the scope of his office or employment.[4] Mass. Gen. Laws ch. 258, § 2. Nevertheless, the MTCA also recognizes that public employers retain immunity in certain circumstances. Mass. Gen. Laws ch. 258, § 10. Of relevance in the instant case are §§ 10(h) and 10(j), which provide that liability will not attach to the Town for

> (h) any claim based upon the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate police protection, [or] prevent the commission of crimes....

---

[4] As this court previously ruled in connection with the Town's motion to dismiss, there is no evidence that Byrne was acting within the scope of his employment at the time he engaged in the altercation with Hogan. However, the Town's liability could stem from the actions of Chief Miller and others who, while acting within the scope of their employment, allegedly made specific, enforceable assurances to Hogan. (See Docket No. 20 at 6-8).

> (j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person....

The plaintiff does not challenge the Town's assertion that these provisions apply to the instant case. Rather, Hogan relies on Mass. Gen. Laws ch. 258, § 10(j)(1), which further modifies the MTCA's grant of immunity. Specifically, § 10(j)(1) provides that public employers are not exempt from:

> any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, **provided that the injury resulted in part from reliance on those assurances.**

(Emphasis added). Consequently, although the Town may claim immunity under §§ 10(h) and (j), if plaintiff's claim is based upon "explicit and specific assurances of safety or assistance," and the plaintiff's injuries "resulted in part from reliance on those assurances[,]" then the Town may still be liable under § 10(j)(1). See Lawrence v. City of Cambridge, 422 Mass. at 409, 412, 664 N.E.2d at 3-5.

As quoted above, Hogan asserts that four "assurances" were made to him. However, only one is actually at issue in this case. Thus, Hogan does not claim that the Town breached its assurance that (1) Byrne would be ordered to leave his gun at the station while he was off duty, or (2) that Byrne would be assigned to an area away from Hogan's business or residence, or (3) that Byrne would be ordered not to respond to any

9

calls involving the plaintiff.[5] Rather, Hogan is contending that the Town is not immune from suit due to the "explicit and specific assurance" that Chief Miller would "ensure that Byrne stays away from and has no contact with the Plaintiff." (Pl. Mem. at 13). As detailed herein, this argument is unpersuasive and the Town is immune from suit.[6]

As an initial matter, this court finds that this generalized assurance, without limit as to time or place, is not sufficiently "definite, fixed, and free from ambiguity" to be enforceable. See Lawrence v. City of Cambridge, 422 Mass. at 410, 664 N.E.2d at 3 (denying summary judgment where alleged police promise of protection was limited to when the plaintiff closed his store at night, and was to last only so long as specific individuals remained a threat to plaintiff). "General representations" and assurances that are simply "implied from the conduct of the parties or situation" are not sufficiently specific and explicit to meet the requirements of § 10(j)(1). See Campbell v. Boston Housing Auth., 443 Mass. 574, 585-86, 823 N.E.2d 363, 371-72 (2005) (and cases cited). The alleged assurance in the instance case, which has no limits as to time or place, is at most a "general representation" that is not enforceable. See Doe v. Massachusetts Dep't of Corrections, 2008 WL 6841181 (Mass. Sup. Ct. Nov. 25, 2008) (Def. Ex. 8) (DOC

---

[5] The undisputed facts establish that these steps were taken. (See e.g., DF ¶¶ 27, 28).

[6] While not seriously argued by the parties, Hogan also alleges in his complaint that the Town negligently failed "to adequately train, supervise, and/or discipline its police employees, including Byrne." (Compl. ¶ 42). This argument must fail for the additional reason that there are no facts which would support a finding that any such alleged failure was a proximate cause of Hogan's injuries. The altercation took place while Byrne was off-duty, and Byrne's status as a police officer was irrelevant to the fight.

entitled to summary judgment since Correction Officer's statement that he would "keep an eye" on the plaintiff when another prisoner was in the area was "not an assurance or promise of safety" and lacked specificity as to location and duration.).

Even if the alleged assurance was enforceable under the MTCA, Hogan's claim against the Town must fail. The undisputed facts mandate the conclusion that Hogan's injuries could not have resulted, in any part, from reliance on any such assurance, as required by Mass. Gen. Laws ch. 258,§ 10(j)(1) (public employers are not exempt "provided that the injury resulted in part from reliance on those assurances."). Clearly Hogan could not be relying on the assurance that Byrne would be kept away from him when Byrnes showed up at his house for the third time on the evening of June 17th. By that time, anyone in Hogan's position would have realized that Byrne was not, in fact, staying away from him. Nor could Hogan have been relying on this assurance when he voluntarily let Byrne into his home, or when he repeatedly re-entered his home after going out to the back porch. Moreover, Hogan could not have been relying on any alleged promise of protection by the Town in light of his decision not to notify anyone of Byrne's presence, despite having ample opportunity to do so. In light of Hogan's conscious decision to allow Byrne into his home, without protection, knowing that Byrne was angry that his wife was there, it is simply impossible to envision a scenario where a jury could find that Hogan's injuries resulted in any part from his reliance on a promise to keep Byrne away. Absent evidence of reliance, the Town is immune from suit. See Lawrence v. City of Cambridge, 422 Mass. at 412, 664 N.E.2d at 4-5 (court notes that if

there is no reliance on an actionable assurance, "by the terms of the statute the city's exposure to liability would cease.").

Hogan's explanation that he "reasonably relied upon the deterrent effect of the standing orders" is unpersuasive. Since the standing order was allegedly that Byrne would be kept away from him, how can Hogan seriously argue that he thought the standing order had a "deterrent effect" given the number of times Byrne appeared at his house on the night of June 17th? Finally, without belaboring the point, even if Hogan hoped that Byrne's self-preservation instincts would prevent him from causing any injury since his bosses were on notice of his threatening behavior, this explanation negates a finding that Hogan was relying on any explicit and specific assurances. Rather, his explanation establishes that he was relying on his own hope and expectation as to how Byrne would behave – a calculated risk that proved to be incorrect. Since the undisputed facts preclude a finding that Hogan's injuries resulted even in part from reliance on the alleged assurances, the Town's motion for summary judgment is allowed.

## IV. **CONCLUSION**

For all the reasons detailed herein, the "Defendant Town of Sandwich's Motion for Summary Judgment" (Docket No. 32) is ALLOWED.

      / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge